STATE OF MAINE *vs.* JOSEPH P. BASS.

York.    Opinion April 27, 1903.

*Intox. Liquors.    Advertising Sales.    Place of Publishing.    Municipal Court.*
*Jurisdiction.    Stat. 1885, c. 366.*

Complaint was made to the Sanford Municipal Court, York County, against the respondent for publishing a newspaper in which were notices "of the sale or keeping for sale of intoxicating liquors," which is made an offense by chap. 366, Public Laws of 1885. This Municipal Court, as provided by the act establishing it, and by the general provisions of law, has jurisdiction only of offenses committed within the limits of York County, with the exception of certain offenses not necessary to be considered.

The publication of the notices complained of was in the Bangor Daily Commercial, of which the respondent was and is the sole owner and publisher. This newspaper is entirely composed, edited and printed in Bangor in the County of Penobscot, where all of the offices, printing and publishing rooms of the newspaper are situated and where all the work of composing, editing, printing and publishing the paper is done. The newspaper is first issued from its publishing rooms in that city, entered as second-class mail matter at the Bangor Post Office, and mailed from there to its subscribers in other cities and towns. The complainant was a regular subscriber to this newspaper, living in Sanford in the County of York, where as such subscriber he received by mail the copy of the newspaper which contained the notices of the sale or keeping for sale of intoxicating liquors.

*Held;* that the language of the statute must be given its natural and ordinary signification in the connection with which it is used. That the common and universal meaning of the word "publish", as well as the technical meaning of the word, when used with reference to a book, magazine or newspaper, is to issue, to send forth to the public for sale or general distribution ; that the newspaper in which these notices were given was published in Bangor, in the County of Penobscot, and was not also published in York County because of the fact that a copy was sent to a subscriber in that county.

It follows that the offense charged was not committed within the limits of York County, and that the Municipal Court before which the proceedings were instituted had no jurisdiction.

Law on agreed statement.    Complaint and warrant dismissed.

This was a complaint under Stat. 1885, c. 366, § 8, and originated before the Sanford Municipal Court, York County. The statute is as follows:—

Sect. 8. "Whoever advertises or gives notice of the sale or keeping for sale of intoxicating liquors, or knowingly publishes any newspaper in which such notices are given, shall be fined for such offense the sum of twenty dollars and costs, to be recovered by complaint. One-half of said fine to complainant and other one-half to the town in which said notice is published."

On being arraigned, the respondent seasonably filed before said court, two motions to dismiss the proceedings,—the first to the jurisdiction of the court, and the second because no offense was alleged in the complaint, on which the warrant in said case was issued.

Both these motions were denied by the court and the respondent then entered a plea of not guilty.

The state then introduced its evidence, but the respondent offered none. Thereupon the court adjudged the respondent guilty, and imposed a fine of twenty dollars and costs, from which judgment an appeal was taken to this court, sitting at nisi prius.

It was agreed that the respondent was, on the 14th day of January, A. D. 1902, and from that time up to and including the 26th day of April, A. D. 1902, the sole owner of a plant, consisting of printing presses, boiler, engine, linotype machines, cases, type material and printing appliances, etc., etc., located on Main Street in Bangor, Penobscot County, State of Maine, and all in a building there situate, owned by the respondent; that said plant was from said 14th day of January A. D. 1902, to and including said 26th day of April A. D. 1902, used by the respondent in printing and getting out the Bangor Daily Commercial and Weekly Commercial; that all of the offices of each of said papers were, on and including the aforedays, in said building; that the composition of the matter, the setting of the type, the preparations of the forms for press work, and the press work itself, is all done exclusively in said building, with the material and appliances owned and kept there by the respondent; that said Bangor Daily Commercial is first issued from its office in said Bangor, entered at the Post Office there as second-class mail matter and sent

out thence to the different towns and cities, to its subscribers of which the complainant in this case was one; that the paper mentioned in said complaint was in the usual course of business, printed in said office, entered at the Post Office, in said Bangor, as second-class mail matter, and that in due course of mail was sent to and received by said complainant, at said Sanford, in said York County, as a regular subscriber to said paper, in the same manner as with all out of town subscribers.

By agreement of the parties the case was reported to the law court, for that court to decide:

*First*—Whether the alleged offense set out in the complaint and warrant, under the foregoing facts and circumstances, was within the jurisdiction of the Sanford Municipal Court:

*Second*—Whether the complaint and warrant, in the aforesaid case, was sufficient, and whether the offense referred to in the statute, is sufficiently set out therein.

If the court should decide both questions in favor of the State, judgment shall be final, and the judgment of the lower court to be affirmed with costs. Otherwise judgment shall be for the respondent.

*W. S. Mathews*, County Attorney, for State.

If one personally out of the county puts in motion a force which takes effect in the county, he is answerable where the evil is done, though his presence was elsewhere. Bishop's Criminal Law, Vol. 1, § 110. A person who sends away a libel, or a threatening letter, or one enclosing a forged instrument to defraud the person addressed, or embodying a false pretense in response to which the goods are parted with where it is received, or soliciting to a crime, may be indicted in the county to which it is transmitted, though he does not go there himself. Bish. Criminal Procedure, Vol. 1, §§ 53–4. *Com.* v. *Blanding*, 3 Pick. 304. American Criminal Law, Wharton, p. 280, § 278.

A newspaper may be published in a county, and yet not printed there. A newspaper may be printed in a county and yet not published there. *Bragdon* v. *Hatch*, 77 Maine, 433; *Blake* v. *Dennett*, 49 Maine, 104. To constitute the offense the newspaper must be put in circulation. This was done by the respondent in the County

of York, and the case does not show a publication within the meaning of said statute in any other county in this State.

*F. H. Appleton and H. R. Chaplin; Edwin Stone,* for defendant.

In construing the statute upon which this complaint is founded the court will not deny to the words "knowingly publishes any newspaper" their common and ordinary signification, and say that circulation and publication are the same thing, and that a newspaper is published wherever it circulates.

If the government's contention is sound, then the Bangor Daily Commercial is published in Lewiston, the Lewiston Journal in Portland, and the Portland Press in Bangor, and each are severally published in as many towns as there are copies in circulation. From which it would follow that the publisher of a newspaper like the Bangor Weekly Commercial with a circulation of 25 or 30,000 copies would, if he published the proscribed notice, be amenable to a fine of from five to six hundred thousand dollars, in gross violation of that wholesome provision of our constitution that "all penalties and punishments shall be proportioned to the offense," "excessive fines shall not be imposed."

The same would be true of the person who advertises the keeping for sale of intoxicating liquors in a newspaper — under this construction of the statute he would commit as many offenses or commit the same offense as many times as there were copies of the newspaper issued, and put into circulation — and that would be true for every day such advertisement was published in the newspaper.

If this is not true, if the advertiser is only liable for a single act of advertising, when he delivers to the publisher of a newspaper to be printed therein the proscribed notice, then if the government's construction is sound this statute discriminates between persons who commit the same offense — between one who publishes a newspaper containing the illegal notice and one who advertises or causes the illegal notice to be published therein.

It seems unnecessary to cite authorities to prove that this statute so construed would be unconstitutional, not only because the penalties and punishments included or that may be included would be disproportionate to the offense committed, but also it discriminates between

persons who commit the same offense but who stand equal before the law.

The statute under which these proceedings are had, being a penal statute, must be construed strictly and not broadly or hypothetically. There is no analogy whatever between this statute and the law relative to the publication of a libel.

The Legislature, by various statutes, recognizes that a newspaper is not migratory, but has a permanent place of abode, and is published in a single fixed place. Stat. 1885, c. 366. R. S., c. 6, § 193. R. S., c. 52, § 9. The place of publication is where the paper is first issued — i. e., given to the public for circulation, and not the place where the paper may be sent for distribution. 16 Am. & Eng. Enc. of Law 1st. ed. 491; citing *Le Roy* v. *Jamison*, 3 Sawy. (U. S.) 369; *Haskell* v. *Bartlett*, 34 Cal. 281; *State* v. *Hoboken*, 44 N. J. L. 131; *Palmer* v. *McCormack*, 30 Fed. Rep. 82; *Hart* v. *Smith*, 44 Wis. 213; *Ricketts* v. *Hyde Park*, 85 Ill. 110; *Rose* v. *Fall River Five Cents Savings Bank*, 165 Mass. 273; *Belfast Savings Bank* v. *Lancey*, 93 Maine, 428; *Hollis* v. *Hollis*, 84 Maine, 96; *Telegram Newspaper Company* v. *Commonwealth*, 172 Mass. 295.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, SPEAR, PEABODY, JJ.

WISWELL, C. J. A complaint was made to the Sanford Municipal Court against the respondent for publishing a newspaper in which were notices "of the sale or keeping for sale of intoxicating liquors," which is made an offense by chapter 366 Public Laws of 1885. Upon this complaint a warrant was issued. The respondent upon being arraigned, with other defenses, filed a motion to dismiss the complaint and warrant because of the want of jurisdiction of the court. This, as well as the other objections to the proceedings, was overruled and the case brought to the Supreme Judicial Court upon appeal. There the case was reported to the law court upon an agreed statement of facts.

It is only necessary to consider the jurisdictional question seasonably raised by the respondent. The following facts appear from

the agreed statement relative to this question. The publication of the notices complained of was in the Bangor Daily Commercial, of which the respondent is, and at the time alleged in the complaint was, the sole owner and publisher. This newspaper is entirely composed, edited and printed in Bangor in the County of Penobscot, where all of the offices, printing and publishing rooms of the newspaper are situated, and where all the work of composing, editing, printing and publishing the paper is done. The newspaper is first issued from its publishing rooms in that city, entered as second-class mail matter at the Bangor Post Office, and mailed from there to its subscribers in other cities and towns. The complainant was a regular subscriber to this newspaper, and lived in Sanford in the County of York; as such he there received by mail a copy of the newspaper which contained the advertisement of the sale or keeping for sale of intoxicating liquors, the advertisers being a firm located in the City of Philadelphia.

The Sanford Municipal Court, as provided by the act establishing it, and by the general provisions of law, has jurisdiction only of offenses committed within the limits of York County, with the exception of certain offenses not necessary to be here considered; so that the question to be decided is, whether or not this offense was committed within that county.

The statutes makes it an offense for any one to "knowingly publish any newspaper in which said notices are given," that is, "notices of the sale or keeping for sale of intoxicating liquors." The respondent did publish a newspaper in which such notices were given. Did he publish it in York County, under the facts above stated, because of the fact that a copy of the newspaper was mailed to and received by a subscriber living in that county? Certainly not. The paper was published in Bangor in Penobscot County. The language of the statute must be given its natural and ordinary signification in the connection with which it is used, because the meaning of the word "publish", depends upon the subject with which it is connected. The publication of a slander or libel, or of a will, means something quite different from the publication of a newspaper. When used with reference to a book, magazine or newspaper, the common and univer-

sal, as well as the technical meaning of the word, is to issue, to send forth to the public for sale or general distribution. It follows that the place of the publication of a newspaper is where it is first issued to be delivered or sent by mail or otherwise to its subscribers. It is not necessarily where the newspaper is printed, as it may be printed in one place and yet published in another, as this court has several times decided with reference to the publication of notices of the foreclosure of a mortgage. *Bragdon* v. *Hatch,* 77 Maine, 433 ; *Hollis* v. *Hollis,* 84 Maine, 96.

It is urged that the word in this connection should be given the same signification as when applied to a libel, in which case there is a publication, both by common law and by statute in this state, "by delivering, selling, reading or otherwise communicating a libel directly or indirectly to any person." But this is a technical meaning of the word peculiar to its connection, and was not the sense in which it was used in the statute under consideration. See *Rose* v. *Fall River Five Cent Savings Bank,* 165 Mass. 273.

It follows that the offense charged in this case was not committed within the limits of York County, and that the Municipal Court before which the proceedings were instituted had no jurisdiction.

*Complaint and warrant dismissed.*